Geertruda RYAN, Plaintiff
and Appellant,

v.

Michael L. RYAN, Defendant
and Appellee.

No. 13063–r–JF.

Supreme Court of South Dakota.

Argued Nov. 26, 1980.

Decided Feb. 11, 1981.

Jauane J. Bleau of East River Legal Services, Vermillion, for plaintiff and appellant.

John Kabeiseman of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for defendant and appellee.

FOSHEIM, Justice.

The trial court granted appellant-mother a divorce, but deferred to the State of Arizona for a custody determination regarding the two minor children of the marriage on the grounds that South Dakota is an inconvenient forum. This appeal is from the child custody part of that judgment. We reverse.

On April 10, 1979, appellee-father entered the marital home in Yankton, South Dakota, with two adult male relatives and, against appellant's wishes, removed the couple's two minor children. Appellant promptly filed an action for divorce, alleging her fitness and desire for custody of the children, and on April 25, 1979, filed an affidavit and motion for an order that the children be returned to her. On June 12, 1979, all the pleadings were served on appellee in Arizona. On June 14, 1979, appellee appeared specially by counsel to challenge the jurisdiction of the trial court. He has not appeared otherwise and has not disputed the mother's fitness or her right to have custody of the children. The record discloses no custody proceedings pending in the State of Arizona.

The trial court rendered a decision in which it found appellant to be a fit and proper person to have the care, custody and control of the minor children. The trial court concluded, however, that while it had jurisdiction to grant appellant custody of the minor children under SDCL 26–5–6,[1] South Dakota is an inconvenient forum to make such a determination. SDCL 26–5–22.[2] The divorce decree deferred to the State of Arizona for a determination of custody for the reason that Arizona has a more recent connection to the children and appellee. SDCL 26–5–23.[3] The basic issue

1. SDCL 26–5–6:

 A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if this state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

2. SDCL 26–5–22:

 A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

 A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

3. SDCL 26–5–23:

 In determining if it is an inconvenient forum, the court shall consider if it is the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, including:

for our review is whether the trial court erred in refusing to make a custody determination under the provisions of the Uniform Child Custody Jurisdiction Act, SDCL ch. 26–5, which has been adopted by both South Dakota and Arizona.

In *Both v. Superior Court,* 121 Ariz. 381, 590 P.2d 920 (1979), the parents had separated in New Jersey in 1976 under a written agreement that gave custody of their four-year-old daughter to the father. Six months later, the father moved from New Jersey to the State of Washington with his daughter. Some four months later, the mother moved to Seattle and the Boths attempted to live together as a family. Five months later, however, while the father was at work, the mother took the child from school and left the state. The father then filed for a divorce in the State of Washington and obtained an order for temporary custody of the child in December, 1977. In January, 1978, the father discovered that his wife and daughter were living in Mohave County, Arizona, and he journeyed to Arizona to obtain physical custody of his daughter pursuant to the Washington custody order. Meanwhile, the mother filed for a separation in Mohave County in December of 1977. The father was served on February 8, 1978, when he was in Mohave County to obtain custody of his daughter. The mother was served the same day with notice of the Washington divorce proceedings.

The father appeared before the Arizona court, but the mother did not appear in the Washington proceedings. In *Both,* the Arizona court said:

> The purpose of the [Uniform Child Custody Jurisdiction] Act . . . is to promote cooperation with courts of our sister states and to deter the practice, sadly all too common, of taking the child and fleeing to another jurisdiction. Usually the best interest of the child is served by having a determination in the state where the parties both reside and where the facts concerning the custody of the child are more readily available to the court. To allow the new state in which the child has been wrongfully taken automatically to take jurisdiction, defeats the purpose of the statute and in almost all instances is contrary to the best interest of the child.

121 Ariz. at 384, 590 P.2d at 923.

To sustain the trial court under the circumstances in this case would allow a parent, knowing that marital problems exist and that divorce proceedings are imminent, to preclude a custodial disposition by the court of the marital domicile simply by removing the children to another state. The absconding parent could thus effectively deny the other parent an opportunity to have custody matters determined in the state of their residence, where the divorce action is properly venued. As the court stated in *Both,* this is not the purpose of the Uniform Act.[4] *See Winkelman v. Moses,* 279 N.W.2d 897 (S.D.1979).

▆ It appears that South Dakota was the "home state"[5] of the children shortly

(1) If another state is or recently was the child's home state;
(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
(4) If the parties have agreed on another forum which is no less appropriate.

4. SDCL 26–5–15 states:
 A court of this state may not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

5. SDCL 26–5–5(5):

before commencement of the divorce action and had been their home state within six months before the commencement of such proceedings. *Cf. Marriage of Settle*, 276 Or. 759, 556 P.2d 962 (1976). The children were absent from this state because of their removal or retention by a person claiming their custody or for other reasons, and a parent continued to live in this state. The conditions for South Dakota to retain jurisdiction under SDCL 26–5–6 therefore existed. The criteria in SDCL 26–5–23 also pointed to South Dakota rather than Arizona as the proper forum for a custody determination. Physical presence of the children is not determinative of custody,[6] *McNeal v. Mahoney*, 117 Ariz. 543, 574 P.2d 31 (1977), and unilateral removal of children without notice and approval has no effect upon the residency of the child nor is it within the classification of a "temporary absence." *Winkelman v. Moses*, supra.

In *Winkelman v. Moses*, supra, we were faced with inapposite facts. In that case, the father unilaterally removed his daughter from the custody of the mother in the State of California contrary to the order of the court and brought her to South Dakota. The child had been residing with her mother in California for a period of five years, and we noted that to allow the circuit court of Lawrence County to exercise jurisdiction would amount to putting a premium upon an improper removal of children from their home state.

In view of the conclusions reached, we find it unnecessary to consider the other issues raised by appellant. The case is reversed and remanded with directions to make a determination as to custody of the children.

---

Terms used in this chapter, unless the context otherwise requires, mean:

. . . . .

(5) "Home state," the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period[.]

---

WOLLMAN, C. J., and DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs in the result.

**6.** SDCL 26–5–10 reads:

Except under §§ 26–5–8 and 26–5–9, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.