2005 SD 110

**In the Matter of the ADOPTION OF H.L.C. and B.A.C.**

**No. 23602.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 3, 2005.

Decided Nov. 2, 2005.

John R. Murphy, Rapid City, South Dakota, Attorney for Father B.C.

Thomas E. Brady, Karen Paige Hunt, Brady & Plumier, Spearfish, South Dakota, Attorneys for appellees, Adoptive Parents D.S. & C.S.

SABERS, Justice.

[¶ 1.]  Father appeals the orders of the circuit court which terminated his parental rights and permitted the adoption of his two children.  Because the court should have declined to exercise jurisdiction over a custody matter, we reverse and vacate.

## FACTS

[¶ 2.] The facts and procedural history concerning this appeal are complex. B.A.C. and H.L.C. are children (children). Their mother is K.S. (mother) and their father is B.C. (father). Both of the children were born in Denver, Colorado. Their mother, father, and paternal grandparents reside in Colorado. The children's maternal grandparents live in Sturgis, South Dakota.

[¶ 3.] The father was convicted of sexual assault on a child and attempt to commit sexual assault in 1995. As a result, he was incarcerated in the Colorado State Penitentiary. The children's mother has not finished high school, has done odd jobs, and worked as a stripper. She is a drug addict.

[¶ 4.] In 1999, the paternal grandparents petitioned for custody of the two children. The maternal grandparents filed a counter petition. The matter was heard before the district court in Huerfano County, Colorado.

[¶ 5.] The district court noted that there was "a great deal of friction" between the parties. A psychologist who performed a custody evaluation documented that ". . . both sets of grandparents are angry and resentful of each other." He believed the grandparents would continue to be "uncooperative to the children's detriment."

[¶ 6.] After expressing concerns about the fitness of either set of grandparents to properly raise the children, the district court granted legal and physical custody to the maternal grandparents. The court ordered the father to have no contact with the children. The mother was allowed visitation only under the supervision of a licensed mental health professional.

[¶ 7.] The court noted that the maternal grandfather "evinced a hard-nosed attitude when it comes to exchanging the children for visitation." Absent a voluntary agreement, the court did not believe out-of-state visitation between the parties would work. As a result, the court granted liberal visitation to the paternal grandparents so long as they traveled to South Dakota to see the children.

[¶ 8.] After the determination of custody, the children moved to Sturgis with their maternal grandparents. The district court's concerns pertaining to visitation became a reality. The parties were once again in Colorado arguing over the visitation and custody issues. The paternal grandparents made a motion to hold the maternal grandparents in contempt of the visitation order. The court did not find a willful violation of the visitation order, but did find that visitation required a specific schedule, which it granted.

[¶ 9.] On May 28, 2003, the maternal grandparents filed a petition for adoption in the circuit court of Meade County, South Dakota. As part of this action, they asked the circuit court to waive the father's consent to adoption and terminate his parental rights. The father responded with a motion to dismiss for lack of subject matter jurisdiction. He argued that Colorado maintained exclusive jurisdiction over any matter affecting visitation or custody.

[¶ 10.] During the adoption action in South Dakota, the issues of visitation and custody were being litigated in Colorado. The maternal grandparents unsuccessfully moved the district court to have the matter transferred to South Dakota. The father, who had been released from prison, filed motions for visitation.

[¶ 11.] The circuit court in South Dakota heard arguments on the issue of subject matter jurisdiction. It acknowledged that there was "at least facially another custody proceeding in Colorado" and it had to con-

tact the Colorado district court to discuss the jurisdictional issue.

[¶ 12.] On February 2, 2004, the district court in Colorado issued an order concerning jurisdiction. The court concluded that under Colorado law it continued to have exclusive jurisdiction in the child custody case because both parents were living in Colorado. As a result, the court stated that it would continue to maintain jurisdiction over the father's motion for visitation. However, under Colorado law, the court was precluded from exercising jurisdiction over an adoption proceeding unless the children resided in Colorado. Because the children were living in South Dakota, the district court concluded that it could not prevent the South Dakota circuit court from exercising jurisdiction over the issue of adoption. Neither party appealed the Colorado district court's findings of fact or conclusions of law.

[¶ 13.] On February 6, 2004, the circuit court held a hearing on whether to waive the father's consent to adoption and terminate his parental rights. The father renewed his motion to dismiss for lack of subject matter jurisdiction. He argued that the Colorado district court had clearly maintained jurisdiction over any issue pertaining to custody and visitation with the children. He further argued that if the circuit court terminated his parental rights, it would terminate his right to custody or visitation and thereby infringe on the Colorado district court's exclusive jurisdiction.

[¶ 14.] The circuit court noted that the termination of father's parental rights was "inextricably intertwined with the custody issue." However, it disagreed with the father's assertion that terminating his parental rights would also terminate his right to visitation and custody. The court concluded that at a minimum, it had jurisdiction to proceed with the issue of whether to terminate the father's parental rights. After the hearing, the court terminated the father's parental rights.

[¶ 15.] A hearing was then held on the adoption issue. The father and the paternal grandparents again raised the issue of jurisdiction and the order of visitation made by the district court. The circuit court ordered that the children be adopted by the maternal grandparents. It also announced its intention to modify the Colorado court's visitation schedule as it pertained to the paternal grandparents.

[¶ 16.] The maternal grandparents filed the orders terminating parental rights and granting the adoption with the district court in Colorado. The court issued an order to show cause why the proceedings should not be dismissed. The father responded that it was his belief that the South Dakota Supreme Court would reverse the orders of the circuit court. As a consequence, the district court dismissed the father's motions for visitation *without prejudice.*

[¶ 17.] Father appeals the orders of the South Dakota circuit court, raising one issue:

> Whether the South Dakota trial court erred in exercising subject matter jurisdiction in this case when the issues included custody.

### Standard of Review

[¶ 18.] Whether the trial court had subject matter jurisdiction to terminate the father's parental rights and order an adoption is a question of law. "Accordingly, [that issue is] fully reviewable and we afford no deference to the conclusions reached by the trial court." *In re Yankton County Com'n,* 2003 SD 109, ¶ 9, 670 N.W.2d 34, 37. Furthermore, to resolve this case we must engage in statutory

interpretation. "We review statutory interpretation de novo." *Id.* (quoting *Maas v. Department of Commerce and Regulation,* 2003 SD 48, ¶ 8, 661 N.W.2d 726, 730).

## Decision

■ [¶ 19.] South Dakota law concerning jurisdiction over custody issues is in SDCL chapter 26–5A. Prior to July 1, 2005, that chapter was our version of the Uniform Child Custody Jurisdiction Act (UCCJA).[1] Some of the primary goals of the UCCJA included stability in custody litigation, discouraging "jurisdictional competition" and promoting communication between courts toward the goal of resolving disputes in the best interest of the children. *Lustig v. Lustig,* 560 N.W.2d 239, 242 (S.D.1997) (citing *In re M.C.S.,* 504 N.W.2d 322, 329 (S.D.1993) (Sabers, J., concurring)). Another purpose behind the UCCJA was the prevention of forum shopping. *In re M.C.S.,* 504 N.W.2d at 324. In *Lustig,* we noted that courts must adhere to the jurisdictional requirements of the UCCJA and the prohibitions of the Parental Kidnapping Prevention Act (PKPA). 560 N.W.2d at 242.

[¶ 20.] In the findings of facts and conclusions of law, the trial court held that it had subject matter jurisdiction to terminate the father's parental rights and order an adoption of the children. However, the trial court and all of the parties recognized that there was a simultaneous action involving custody and visitation pending in Colorado. SDCL 26–5A–6 dealt with simultaneous custody proceedings in other states. It provided in part:

A court of this state *may not exercise its jurisdiction* under this chapter if at the time of filing the petition *a proceeding concerning the custody of the child was pending in a court of another state* exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons[.]

SDCL 26–5A–6. Pursuant to the statute, the issue is whether the trial court had subject matter jurisdiction, and whether it is permitted by statute to *exercise its jurisdiction.*

[¶ 21.] Once the trial court determined that there was another custody proceeding in Colorado, it should have declined to exercise jurisdiction unless Colorado was not "exercising jurisdiction substantially in conformity" with the UCCJA, or it had stayed the proceeding. SDCL 26–5A–6. Colorado has adopted the UCCJEA, the revised version of the UCCJA. Thus, at the time the petition for adoption was filed, Colorado was exercising jurisdiction "substantially in conformity" with the UCCJA.

[¶ 22.] On February 2, 2004, the Colorado court issued its order concerning jurisdiction. The order unequivocally said that the court continued to have jurisdiction over custody and visitation issues. In addition, the court noted that it "shall continue to maintain jurisdiction concerning" the father's motion for visitation. The order did not stay the custody or visitation proceedings. Although Colorado law would have permitted the district court to transfer the custody matter to South Dakota, the Colorado court denied the maternal grandparent's motion to transfer. As a result, the South Dakota circuit court

---

1. The UCCJA was repealed by the South Dakota Legislature during the 2005 Legislative Session. It was replaced by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). However, during the pendency of this action, South Dakota had the UCCJA in effect and Colorado was following the UCCJEA.

erred when it exercised jurisdiction over the issues in this case.

[¶ 23.] The maternal grandparents focus most of their argument on the fact that Colorado did not have jurisdiction to order an adoption of the children. South Dakota, on the other hand, did have jurisdiction to order an adoption simply because the children resided in Sturgis. While their argument may have superficial appeal, the only way the circuit court could order the adoption was if the father's parental rights were terminated. This could not be done without jurisdiction.

[¶ 24.] In the case of *In re M.C.S.*, we held that termination of parental rights is a custody proceeding under the UCCJA. 504 N.W.2d at 326. We stated, "once [ ] it is determined that jurisdiction exists . . . then the court should determine whether jurisdiction should be exercised in view of SDCL 26–5A–6[.]" *Id.* Thus, even though the circuit court had jurisdiction to order the adoption, it should have refused to exercise its jurisdiction pursuant to SDCL 26–5A–6. The termination of the father's parental rights, which, was a pre-requisite to ordering the adoption, was clearly a custody proceeding. Under SDCL 26–5A–6 and the Colorado court's order, the Colorado court had continuing jurisdiction over the matter. *See Johnson v. Johnson*, 477 N.W.2d 603, 605 (S.D.1991) (". . . the new state must defer to the continuing jurisdiction of the state that originally decided custody, unless the original state no longer has jurisdiction or has declined to assume jurisdiction.")

 [¶ 25.] The maternal grandparents also argued that if South Dakota would not exercise jurisdiction, the children would never be able to be adopted. As mentioned earlier, South Dakota would have jurisdiction to order an adoption. However, the maternal grandparents must seek to have the father's parental rights terminated in Colorado, or have Colorado relinquish jurisdiction before an adoption can be ordered. Having done neither, the South Dakota circuit court should have refused to exercise its jurisdiction pursuant to SDCL 26–5A–6. Accordingly, the decision of the circuit court is reversed, and its orders vacated.[2]

[¶ 26.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

2. It is important to note that the same decision would be reached under the PKPA. Under the PKPA, a state retains exclusive, continuing jurisdiction over all matters related to custody and visitation so long as two conditions are met: (1) the state has jurisdiction over the matter under its own laws; and, (2) the child or *any of the contestants* to the action continue to reside in the issuing state. 28 USC 1738A (d) (cross reference with 28 USC 1738A (c)(1)) (emphasis added).

The maternal grandparents argue that sub (1) is not met because Colorado does not have jurisdiction over the adoption under its own laws. However, as we mentioned above, termination of parental rights must occur before an adoption can take place. Termination of parental rights is a custody proceeding over which the Colorado court had exclusive and continuing jurisdiction. As to sub (2), the mother, father, and paternal grandparents continue to reside in Colorado.